MORSEMAN v. YOUNKIN et al.

DOWNS v. THE SAME.

DAVENPORT v. THE CITY OF DAVENPORT.

GIFFORD v. THE SAME.

1. Taxation: OF NATIONAL BANK SHARES. Chapter 153, Laws of 1868, providing for the taxation of shares in national banks, is authorized and valid under the 41st section of the act of congress of June 3, 1864, and that of February 10, 1868.

Morseman v. Younkin.

*Argu.* 1. EFFECT OF REPEALING CLAUSE. By the clause contained in the fourth section of said act of the general assembly of 1868, repealing all acts and parts of acts inconsistent therewith, the obstacle (existing when the case of *Hubbard* v. *The Supervisors, etc.*, 23 Iowa, 130, was decided) to taxing shares in national banks, presented by section 1598 of the Revision, which provided merely for the taxation of the *capital* instead of the *shares* of banks organized under the State banking law, was removed; and under the general revenue law of the State the taxation of shares in the State banks is authorized.

2. —— RIGHT TO EXEMPTION MUST BE CLEAR. If property which the legislature has declared to be liable to taxation is to be exempted from bearing its due proportion of the public burden, the exemption must rest upon some clear and just ground; and courts are not justified in indulging in nice distinctions to defeat the legislative will.

3. Constitutional law: REPEAL OF BANKING ACTS. Section 5 of article 8 of the new Constitution, which declares that no act of the general assembly authorizing or creating corporations or associations with banking powers, nor amendments thereto, shall take effect until the same shall have been submitted to, and received a majority vote of, the people, does not apply to, nor operate as a limitation upon, the *repealing* power of the legislature.

4. —— It was accordingly *held*, that the 4th section of chapter 153, Laws of 1868, repealing section 1598 of the Revision, which was a part of the general banking law, and which authorized the taxation of the capital instead of the shares of banks organized under the State law, was authorized and valid, it having received the two-thirds vote of the legislature required in such cases by section 12, article 8 of the Constitution.

## THURSDAY, JUNE 24.

TAXATION OF NATIONAL BANKS. — The *first* and *second* causes are appeals (by defendants) from Johnson; the *third* and *fourth* (by plaintiffs) from General Term, 7th District (Scott County). They all involve the same question, and have been submitted together.

*Edmunds & Ransom, Clark & Haddock, James T. Lane, Stuart & Armstrong* for the plaintiffs.

*Henry O'Connor, John Williams, J. D. Campbell*, for the defendant.

WRIGHT, J.—It was held in *Hubbard* v. *Supervisors of Johnson Co.*, and the other cases therewith decided, 23 Iowa, 130, by a majority of the court, under the provisions of the 41st section of the act of congress of June 3, 1864, and the statutes of the State as they then stood, that there could be no taxation of the *shares* in national banks. Without repeating them, we refer to the facts of the cases there decided, that the points then and now ruled may be the better apprehended and understood.

1. TAXATION: of national banks.

In 1868 (February 10 — the case above referred to was ruled in July, 1867), congress passed an act entitled "An act in relation to taxing shares in national banks," containing this provision : "And the *legislature* of each State may determine and direct *the manner and place of taxing of all the shares* of national banks located within said State."

In April, 1868, the general assembly of the State passed an act for the taxation of the shares of national banks (Laws of 1868, p. 213), which provides : that all the shares of these associations, held by any person or persons, shall be included in the valuation of the personal property owned by them ; but not at a greater rate than is assessed on other moneyed capital in the hands of individuals in this State.

The second section declares that if congress should change, alter, or amend the acts providing for a national currency, the assessors in townships, towns and cities, should assess these shares in conformity with such new legislation, but not at a rate greater than is imposed upon other moneyed capital, etc. The act of April 3, 1866 (and which was construed in the Hubbard case), and all *other acts and parts of acts,* inconsistent, etc., *are repealed.*

There is no difference of opinion upon the proposition that all property should be equally taxed, or as to the meaning and scope of the statute which declares that all property (aside from certain specified articles), real and personal, within the State, is subject to taxation. Rev. § 712. But we held in the previous cases, following the decisions of the federal courts, that taxation of the *capital* was not the taxation of the shares of these banks.

And it was held (under section 1598 of the Revision), that the tax was to be upon the *capital* of banks, *organized within the State*, and not upon the *shares*, and that as a consequence, under the act of congress, the legislature could not, by the act of 1866 (April 3), tax these *shares* in national banks. But for this provision, I am not mistaken in saying that the taxation would have been sustained. For it is expressly provided that stock or shares in any corporation or company, not required by law to be otherwise taxed, shall be liable to taxation.

It was held that by section 1598, stock in banking corporations was to be *otherwise* listed and taxed, to be taxed through the *capital*, and hence not by the shares, as in other cases. It was also held that it might be competent for the State, in granting a franchise, to affix as conditions of the grant, that *shares* and *capital* of the company should both be subject to taxation, but that this should not be allowed, lest double taxation might ensue, unless this was the clearly expressed intention of the statute. This intention, in our opinion, did not appear; and hence, as the *capital* was to be taxed, the *shares* should not be. And yet nothing was clearer than that if there had been no provision for the taxation of the *capital* of banking associations, thus placing such companies upon a peculiar and distinct ground, the right under the general law to tax the *shares* would be undeniable, and from the conclusion that the *shares in national banks*

would have hence been taxable, there would have been no escape.

Does the act of 1868 then make the matter any better *Argu.*: 1. Effect for the taxing power? It repeals all acts of repealing clause. and parts of acts *inconsistent* with its provisions. The law of 1866 had just been declared ineffectual to accomplish the purpose designed.

As we have seen but for section 1598 (being a part of section 11 of the "General Banking Act" of this State) the unquestioned legislative intent could have been carried out. We then inquire, does not this obstacle still remain? It seems to me not. The law of 1868 provides for the taxation of the *shares* of national banks. This is allowed by the 41st section of the act of congress of June 3, 1864, and it is not pretended that there is any thing in the act of February 8 denying or making less manifest or certain this right. Our law (of 1868, p. 213) provides for their taxation like other moneyed capital in the hands of individuals, and hence, under the general law, like shares in other banks and corporations. Section 1598 is *inconsistent* with these provisions, in conflict with the declared will of the legislature upon this subject, a will declared after a construction of the prior statute, and designed to remove the obstacle pointed out, and if *inconsistent* is declared *repealed*, and hence must be so regarded. In view of all the legislation, general and special, upon the subject — the policy of the law that all property should bear its just and due proportion of the public burden — it seems to me there can be no fair escape from this conclusion.

This view is strengthened by some other considerations. A grave doubt might arise whether this repeal was intended, if after such repeal there remained no law for the taxation of shares in banks organized under our general law. We have already seen, however, that these can

Morseman v. Younkin.

be reached under the general revenue law. Then, again, we know there is not, if there ever was, in the State a bank organized under this law.

This thought is quite material, as indicating the actual condition of things in the State, and the absence of objection to the legislative comprehension in passing the repealing clause. For it could well be reasoned: "There never has been a bank under this law — or if any, certainly none now — if any now or hereafter, then, this section out of the way, the shares therein can be taxed like shares in other corporations. This section is the obstacle in the way of making these shares in national banks, meet their just proportions of the public taxes, as just declared by the highest judicial tribunal of the State, and hence by repealing *all acts and parts of acts inconsistent with this act,* we leave the way clear and unobstructed." If this is not so, then it is difficult to see why they should re-enact the law of 1866, as was done, so far as the first section was concerned, it being *the section* making the shares liable to taxation.

Then, to look at another thought. There was no difficulty under the congressional legislation as to the right 2. —— right of of the State to subject this property to taxaexemption
must be clear. tion. As to the intention and purpose of our own legislature there can be no doubt. And hence it will be seen that, by the second section of the act under consideration, the assessors were given the power to assess these shares, in conformity to any change in congressional legislation.

What could more clearly show the intention and purpose to tax these shares, and to remove the last obstacle if possible, in the way of such intent?. It had just been declared that with section 1598 in force, there could be no taxation. This continued, the way was effectually hedged up. To confer this power upon the assessors, and yet

leave the law so that there could be no taxation, as the federal legislation then stood, or to suppose that it was only to have prospective force, is most unreasonable. It is our duty to give the law force and effect if we can. It repeals any thing in the way of or inconsistent with its operation. If this property is to escape taxation, the right ought to rest upon some clear and just ground.

The legislature having declared its liability, courts are not justified in indulging in nice distinctions, in defeating this will. The way is, to our mind, clearer, plainer, better sustained by reason and in principle to uphold than to defeat the legislative will, and hence we hold this property liable to taxation.

Before passing to another point made in this connection, it is proper to say that the case is ruled upon our *State legislation*, without reaching the argument drawn from the recent legislation of congress, and quoted in the commencement of this opinion (proviso to act of Feb. 10, 1868). That statute is certainly not in conflict with the result here reached. It does not in any way lessen or take from the States the power to tax these shares. And there is, to say the least of it, much plausibility in the proposition that this act grew out of the adjudications in the State and federal courts, and the apparent and indeed actual difficulty in every instance, of so framing the legislation as to carry out the rule of congress (under the proviso of the 41st section of the act of 1864), and reach a large amount of property which was regarded as escaping its just proportion of the public burden. And therefore the act of 1868 leaves the States to determine the *manner and place* of *taxing the shares* of national banks.

It is sufficient for us, however, without getting into this argument or expressing an opinion thereon, to say that the recent act is not in conflict with the power to

Morseman v. Younkin.

tax under our law as it now stands. It sustains rather than denies the right.

It is said, however, that this section is a part of the " General Banking act," and that by the Constitution, **3. CONSTITU-** article 8, section 5, it could only be *repealed* **TIONAL LAW:** **repeal of bank-** by a vote of the people as therein contem- **ing acts.** plated. This section declares that no act of the general assembly, *authorizing* or *creating* corporations or associations with banking powers, nor *amendments* thereto, shall take effect, or in any manner be in force, until the same shall have been submitted, separately, to the people at a general or special election, * * * and shall have been approved by a majority of, etc. And by the last section of the article (§ 12) it is provided that, subject to the preceding provisions, the general assembly may *amend* or *repeal* all laws for the organization or creation of corporations, by a vote of *two-thirds* of each branch thereof.

It is claimed and not denied that the act of 1868 (p. 213) was passed by the requisite *two-thirds* vote. And, for myself, remembering that the *people*, and not *banks*, were to be protected by this provision, and not forgetting the strict rules obtaining when there is claimed to be conflict between a statute and the Constitution — I say, for myself, I am inclined to the opinion that section 5, article 8, does not prohibit, and was not designed to forbid, legislative repeal of such an act, or parts of it. To repeal, as here used, and when applied to this section, is neither to *authorize, create*, nor *amend*. For, though these corporations might object to such repeal as impairing the obligations of the contract, resulting from the power conferred by the State and accepted by them, it was never contemplated that the people could or would object to a *recall* of the power parted with and vested in such corporations. There is hence no limitation upon the

repealing power, except the repealing act must be passed by a vote of *two-thirds*, etc. I do not forget that, by the old Constitution (that of 1846), the legislature was expressly *prohibited* from creating, renewing, or extending corporations with banking privileges. (Art. 8, § 1)

The reasons influencing are well understood and need no repetition to those familiar with the history of banks a quarter of a century since. In 1857 the people had so far conquered these objections and overcome their fears, as to remove this absolute prohibition, provided the law creating the same, or amendments thereto, should be submitted to them for their approval or rejection. This, as I have already suggested, was for *their* protection. They never declared that such acts might not be repealed, without their approval. And the Constitution, looking it may be, and this is doubtless so, to the contest waged most bitterly for years and years between corporations and the State, as to the right of the legislature to *repeal* acts conferring special privileges, and as something of a safeguard to such corporations, declared that there could be no repeal without this *two-thirds vote*.

The legislature cannot *amend* laws conferring banking powers by this vote even, nor otherwise than by a vote of the people, upon a law for that purpose. Nor can they *repeal* by the legislative vote, except subject to the preceding provisions, such as that the stockholder shall be individually liable to the extent declared in section 9, that the billholders shall be preferred over other creditors and the like. For rules of construction forming this conclusion I cite *Clark* v. *Polk County*, 19 Iowa, 256 ; *Yant* v. *Brook*, id. 87 ; *Duncombe* v. *Prindle*, 12 id. 1 ; *Noble* v. *The State*, 1 Gr. 325 ; *State* v. *Smith*, 7 Iowa, 244.

The cases of *Davis* v. *Woolnough* (9 Iowa, 104) and *Ex parte Pritz* (id. 30) involved the construction of article 3, section 30, and what is there said about *amendments* and

*repeals*, can hardly be regarded as in conflict with the views above expressed.

All the judges concurring, it is ordered that the first and second cases be reversed and the others affirmed. Judgments accordingly.